**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

|  |  |  |
|---|---|---|
| CAROL JOHNSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CAUSE NO. 3:17-cv-00855-MGG |
| COMMISSIONER OF SOCIAL SECURITY SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Carol Johnson ("Johnson") filed her complaint in this Court seeking

judicial review of the Social Security Commissioner's final decision to deny her

application for Supplemental Security Income ("SSI") benefits under Title XVI of the

Social Security Act. This Court may enter a ruling in this matter based on the parties'

consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons

discussed below, this Court reverses the Commissioner's final decision and remands

the decision to the Social Security Administration for further proceedings consistent

with this opinion.

**I.    PROCEDURE**

Johnson filed an application for SSI, alleging an onset date of November 13, 2013.

The Social Security Administration ("SSA") denied her application initially on

September 2, 2014, and upon reconsideration on September 18, 2014. Johnson appealed

and testified before an administrative law judge ("ALJ") via video hearing on October 5,

2016. Prior to the hearing, Johnson amended her alleged onset date to June 20, 2014. On December 16, 2016, having found that Johnson was not disabled as defined by the Social Security Act, the ALJ issued his decision denying Johnson's application for SSI. On September 12, 2017, the Appeals Council denied Johnson's timely request for review, making the ALJ's decision the final decision of the Commissioner.

On November 9, 2017, Johnson filed a complaint in this Court seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). On April 25, 2018, Johnson filed her opening brief. Thereafter, on June 19, 2018, the Commissioner filed a responsive memorandum asking the Court to affirm the decision denying Johnson's benefits. Johnson filed her reply brief on July 19, 2018.

## II.    RELEVANT BACKGROUND

Johnson seeks SSI based on symptoms of borderline intellectual functioning, diabetes, obesity, and anxiety disorder that allegedly make her unable to work. Johnson completed high school in 1992 and was enrolled in special education classes from 1978 to 1992. She has worked in the past as a dishwasher, a restaurant mascot, and a hotel housekeeper. Johnson testified that she stopped working due to insulin reactions and difficulties with her supervisors.

At the hearing, Johnson testified that she has never been married, lives with her mother, and has never had a driver's license. Johnson testified that her diabetes causes insulin reactions about every two and a half weeks, which cause her to lose focus and break out in a sweat. Johnson also testified she has difficulties with math questions, but can help with grocery shopping and helped care for her ailing father before his death.

Johnson stated that she is shy but can interact easily with her friends. Finally, Johnson testified that she occasionally experiences panic or anxiety attacks at night.

After the hearing, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed in the SSA's regulations. *See* 20 C.F.R. § 416.920(a)(4). At step one, the ALJ found that Johnson had not engaged in substantial gainful activity since the alleged onset date of June 20, 2014. At step two, the ALJ found that Johnson has the following severe impairments: borderline intellectual functioning, diabetes mellitus, and obesity. However, the ALJ did not find that Johnson's alleged mental impairment of anxiety disorder was severe. At step three, the ALJ found that Johnson's severe impairments did not meet or medically equal the severity of the one the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ considered Johnson's residual functional capacity ("RFC"). The ALJ concluded that Johnson has the ability to perform medium work as defined in 20 C.F.R. § 416.967(c) with some limitations. The limitations are as follows:

> [Johnson is] limited to no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; no exposure to unprotected heights or moving mechanical parts; limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks, but not at production rate (e.g. assembly line work); can frequently interact with supervisors and coworkers; occasionally interact with the public; no more than occasional decision-making or changes in job setting; and in addition to normal breaks, will be off task up to 10% of the time in an 8 hour workday.

[DE 13 at 19]. At step four, the ALJ found Johnson capable of performing her past relevant work as a housekeeper and dishwasher. The ALJ also found that other jobs

exist in significant numbers in the national economy that Johnson can perform, such as janitor and food prep.

Based on these findings, the ALJ determined that Johnson has not been under a disability, as defined by the Social Security Act, from June 20, 2014. Johnson requested that the Appeals Council review the ALJ's decision. On September 12, 2017, the Appeals Council denied Johnson's timely request for review, making the ALJ's decision the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

III.   **ANALYSIS**

A.   **Standard of Review**

On judicial review, the Social Security Act requires that the Court accept the Commissioner's factual findings if supported by substantial evidence. 42 U.S.C. § 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir.

2005). Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The ALJ must build a logical bridge from the evidence to his conclusion, and a reviewing court is not to substitute its own opinion for that of the ALJ or to re-weigh the evidence. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to confirm that the ALJ considered the important evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2005). To assist the reviewing court, the ALJ must provide at least a glimpse into the reasoning behind his analysis and the decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). However, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

### B.    Issues for Review

Johnson argues that the ALJ's decision should be reversed for the following reasons: (1) the ALJ's made insufficient or deficient findings with regard to impairment listings; (2) the ALJ's failure to evaluate the 2016 medical opinions of Dr. Arshad and social worker Ms. Dugan-Marx, both from the Swanson Center; (3) the ALJ's accordance of limited weight to the medical opinion of psychological consultative examiner Dr. Sacks and the third-party statement of Johnson's mother; and (4) the ALJ's RFC

determination and subsequent hypothetical as relayed to the vocational expert. The Court will handle each argument in turn.

### 1. Impairment Listings

At step three of the analysis, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement, the claimant is disabled. *Id.* If it does not, the analysis proceeds to the next step. *Id.* Here, the ALJ examined Johnson's severe impairments considering Listing 12.05: Intellectual Disabilities.[1] The ALJ found that Johnson did not meet the requirements of paragraphs A, B, C, or D, and thus proceeded to the next step in the analysis. Johnson argues that the ALJ erred in his analysis of Listing 12.05B and 12.05C, which would have automatically qualified Johnson for benefits if satisfied. Further, Johnson contends that the ALJ erred in not mentioning or considering Listing 12.02.

In order to satisfy the requirements for any paragraph under Listing 12.05, the claimant must first prove "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Thus, the claimant must show evidence that demonstrates or supports onset of the impairment before the age of 22.

---

[1] The mental impairment listings, Listings 12.02 and 12.05, were amended on January 16, 2017. The versions of the listings that became effective on September 29, 2016, and were in effect at the time of the ALJ's decision, are the applicable version for the Court's analysis of Johnson's case here.

The required level of severity is met when the requirements in paragraphs A, B, C, or D are satisfied. *Id.* Johnson challenges only the ALJ's analysis of the paragraph B and C criteria, which read:

> B.    A valid verbal, performance, or full-scale IQ of 59 or less;
>
> C.    A valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

*Id.*

### a.    Listing 12.05 Paragraph B Criteria

In order to satisfy paragraph B under Listing 12.05, Johnson must prove that she has a valid IQ score of 59 or less, and that her IQ was 59 or less before she reached age 22. Although an ALJ has the right to reject IQ scores as invalid, he "must provide adequate reasoning that the score is invalid and is inconsistent with the record." *Marshall v. Berryhill*, Case No. 15-C-1300, 2017 WL 1134757, at *6 (E.D. Wisc. March 27, 2017) (citing *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)). Moreover, Listing 12.05 does not "require a single IQ score be preferred over others for the purposes of the listing requirements." *Id.*

Johnson first argues that the ALJ erred in finding that she does not meet the paragraph B criteria because the ALJ did not give appropriate weight to her IQ test in August 2014, which resulted in a full-scale IQ of 53 and would qualify her for benefits based on paragraph B criteria alone. The ALJ instead gave more weight to Johnson's IQ scores as measured at age 6, which were over 80. The ALJ reasoned that Johnson's "IQ for the relevant time period, i.e., before age 22, was tested at over 80." [DE 13 at 18]. The

ALJ also concluded that Johnson's 2014 IQ score of 53 was inconsistent with her earlier IQ scores and her actual levels of functioning. However, the ALJ's assessment of Johnson's IQ evidence in his paragraph B analysis is not supported by substantial evidence as discussed below.

Johnson's first IQ scores at age 6, administered at school, were based on a "PPVT," or Peabody Picture Vocabulary Test, and a "Slosson Intelligence Test." Her lower IQ score at age 41, administered by a consultative examiner as part of her quest for disability benefits, was based on the "WAIS-IV," or the Wechsler adult intelligence scale. The Social Security regulations explicitly warn about the use of different types of IQ tests, stating that "identical IQ scores obtained from different tests do not always reflect a similar degree of intellectual functioning." 20 C.F.R. Pt. 404, App. 1 § 12.00(D)(6)(c). Thus, the ALJ should have been cognizant that comparison of Johnson's different types of IQ tests could be problematic.

Section 12.00(D)(6)(c) further explains that the IQ scores in Listing 12.05 "reflect values from tests of general intelligence that have a mean of 100 and standard deviation of 15," and specifically mentions the Wechsler series, used by consultative examiner Dr. Sacks to test Johnson in 2014, as an example of this kind of intelligence test. As a result, Section 12.00(D)(6)(c) advises that IQs obtained from standardized tests that deviate from this formula "require conversion to a percentile rank so we can determine the actual degree of limitation reflected by the IQ scores." *Id.* In other words, PPVT and Slosson IQ scores should not be used to support a Listing 12.05 analysis until they have been properly converted.

Here, the ALJ does not distinguish between the different types of IQ tests administered to Johnson, but instead discounts the lower Wechsler IQ score because it was administered after Johnson turned 22 and he found, without explanation, that it was inconsistent with Johnson's actual levels of functioning. This is particularly concerning because Listing 12.05 only requires that deficits in "adaptive functioning [be] initially manifested" before age 22. The language of the listing does not invalidate IQ tests administered after the age of 22, or disqualify them for consideration in the Listing analysis. The ALJ's Listing 12.05 analysis also fails to address evidence in the record related to Johnson's deficits in adaptive functioning before she turned 22. For instance, Johnson's school records from 1982-1983, designating Johnson as "mildly mentally handicapped," seem to reflect a manifestation of deficits in her adaptive functioning before the age of 22 that is not accounted for in the ALJ's decision.

As a result, the ALJ's conclusory remarks about the inconsistency between the low IQ score and Johnson's levels of functioning, as well as his dependence on Johnson's first IQ scores, are not supported by evidence in the record. The ALJ notes later in his RFC analysis that the IQ tests are different, but does not cite evidence in any part of his decision that the PPVT and Slosson scores were ever converted in order to be compared meaningfully to the Wechsler results. As the ALJ did not provide enough explanation for his decision regarding Listing 12.05B, the ALJ did not create "logical bridge" between the evidence and his conclusion about Johnson's levels of functioning. *Haynes*, 416 F.3d at 626. Therefore, the Court remands this case back to the ALJ for a more articulate analysis of his decision. *See Steele*, 290 F.3d 940.

### b.    Listing 12.05 Paragraph C Criteria

Johnson also argues alternatively that the ALJ erred in his consideration of Listing 12.05's paragraph C criteria. Here, none of Johnson's reported raw IQ scores, without proper conversion, appear to indicate a full-scale score of 60 through 70, which would be necessary to satisfy the first requirement of 12.05C. *See Pope v. Shalala*, 998 F.2d 220, 223 (7th Cir. 1988) (stating that to meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment).  On remand, the ALJ's proper assessment of Johnson's IQ scores will dictate whether a paragraph C analysis for Listing 12.05 is warranted and if it might result in a finding of disability.

### c.    Listing 12.02

Finally, Johnson argues that the ALJ should have considered her severe borderline intellectual functioning impairment based on Listing 12.02: Organic Mental Disorders. Johnson claims that her impairment satisfies Listing 12.02's paragraph C criteria, which requires a

> "[m]edically documented history of a chronic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and…current history of 1 or more years' inability to function outside a highly supportive living arrangement."

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02(C)(3). While "failing to explicitly refer to a relevant listing does not, by itself, necessitate a remand," failing "to discuss or even cite a Listing, combined with an otherwise perfunctory analysis, may require a remand." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (citing *Steele*, 290 F.3d at 940).

Here, the ALJ's failure to consider Listing 12.02 also necessitates a remand. The ALJ notes generally at the end of his step three analysis that "no psychological consultant designated by the Commissioner on the issue of equivalence has concluded that a mental listing is medically equaled." [DE 13 at 19]. In his RFC analysis, however, the ALJ gives great weight to the opinions of two State Agency psychological consultants, Amy Johnson, Ph.D., and J. Gange, Ph.D., related to Johnson's activities of daily living, social functioning, concentration, persistence and pace, and episodes of decomposition. In the records cited by the ALJ, both consultants opine that Johnson did not satisfy Listing 12.02 [DE 13 at 21 (citing Dr. Johnson's opinion at Exhibit 1A/5 and Dr. Gange's opinions at Exhibit 3A/5, both of which reached identical conclusions about the Listing 12.02 criteria)]. Yet, the ALJ does not explicitly mention their Listing 12.02 opinions anywhere in his decision. Instead, the ALJ makes a general statement that no psychological consultant "has concluded that a mental listing is medically equaled," without articulating any reasons for rejecting this opinion evidence, which is directly relevant to Listing 12.02's paragraph C criteria regardless of the ALJ's ultimate conclusion. [DE 13 at 19].

Therefore, the ALJ's acceptance of the consultants' conclusion disregarding Listing 12.02, without mentioning their conclusion or explaining its relationship to other relevant evidence in the record in his step three analysis, qualifies as a perfunctory analysis that warrants a remand. *See Minnick v. Colvin*, 775 F.3d 929 (7th Cir. 2015). The ALJ's analysis prevents the Court from performing meaningful judicial review absent discussion of the relevant medical opinion evidence and specific reasons for accepting

or rejecting it in light of the Listing requirements. *See Brindisi*, 381 F.3d at 786.

Accordingly, the ALJ's step three analysis specific to Listing 12.02 is not supported by substantial evidence and must be remanded for further consideration.

### 2. Flawed Hypothetical to the Vocational Expert

Johnson argues that the ALJ presented a flawed hypothetical to the vocational expert ("VE") at the hearing, which then resulted in a mental RFC including the following limitations:

> limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks, but not at a production rate (e.g. assembly line work); can frequently interact with supervisors and coworkers; occasionally interact with the public; no more than occasional decision-making or changes in job setting; and in addition to normal breaks, will be off task up to 10% of the time in an 8 hour workday.

[DE 13 at 19]. Johnson specifically contends that the ALJ failed to lay a foundation for the limitation included in the hypothetical to the VE that Johnson would be off task up to 10% of the workday but no more. Johnson also argues that the ALJ failed to properly account for all of Johnson's limitations of concentration, persistence, and pace in both the hypothetical and RFC.

Both the hypothetical posed by the ALJ to the vocational expert and the ALJ's RFC assessment must incorporate all limitations supported by medical evidence in the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). Additionally, this includes any limitations the claimant may have in concentration, persistence, or pace. *Id.* (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)).

Here, the ALJ has not connected his finding that Johnson would only be off-task 10% of the time in addition to normal breaks with any evidence in the record. In fact, the ALJ's decision cites considerable evidence, but none of it is clearly linked to the off-task limitation. In support of only a 10% off-task limitation, the ALJ relies upon the State Agency consultants' conclusions that Johnson "can understand, remember, and carryout unskilled tasks; can relate on an ongoing basis with coworkers and supervisors; can attend to tasks for a sufficient period of time to complete tasks; and can manage the stresses involved with unskilled work." [DE 13 at 21 (citing Dr. Amy Johnson's findings in her August 28, 2014, Disability Determination Explanation form [*See* DE 13 at 71])]. Johnson directs the Court's attention to other evidence in the record, including treatment notes from Social Worker Mary Dugan-Marx in June 2016 and her mother's third-party Function Report, that was not addressed by the ALJ and could shows that Johnson would likely be off-task more than 10% of any work day.

The Court need not reach any conclusion about the value of the additional evidence Johnson cites. The ALJ's hypothetical and RFC determination present essentially the same problem addressed in *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017). In *Lanigan*, the court rejected the ALJ's 10% off-task limitation for a lack of a logical bridge. Here, the ALJ has similarly cited evidence that does not connect to the 10% off-task limitation directly enough to allow this Court to trace his reasoning for incorporating the limitation in his hypothetical to the VE and ultimately in Johnson's RFC. Therefore, that limitation is unsupported by substantial evidence and dooms the resulting RFC on review here.

Similarly, the ALJ's hypothetical and RFC do not adequately account for Johnson's moderate limitations in concentration, persistence, and pace—limitations adopted by the ALJ in his Listing analysis. "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. " 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(3).

While the ALJ included more specific limitations related to Johnson's issues with concentration, persistence, and pace than the ALJ did in *Yurt v. Colvin*, upon which Johnson heavily relies here, the ALJ still fails to demonstrate that he accounted for all her explicitly noted limitations. *See O'Connor-Spinner*, 627 F.3d at 620 (stating that "the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003). Specifically, the ALJ does not account for the State Agency consultants' finding that she is moderately limited in "[t]he ability to sustain an ordinary routine without special supervision." [DE 13 at 70, 82]. As a result, the hypothetical and RFC are not supported by substantial evidence and must be remanded for this second reason.

### 3.  Medical opinion evidence and third-party statements

Johnson argues that the ALJ erred in failing (1) to evaluate the opinion of a social worker, Ms. Dugan-Marx, (2) to properly consider and weigh the medical opinion of consultative examiner Dr. Sacks, and (3) to create a logical bridge between the ALJ's conclusion and the third-party opinion offered by Johnson's mother.

### a. Social Worker Dugan-Marx

On June 3, 2016, Mary Dugan-Marx, a licensed clinical social worker, offered a clinical assessment of Johnson after she was referred by her treating physician, Dr. John Kelly. Ms. Dugan-Marx diagnosed Johnson with generalized anxiety disorder. While the assessment was signed by Drs. Mohammed Arshad and Kumud Aggarwal, the diagnosis and clinical assessment was completed by Ms. Dugan-Marx. Johnson argues that the ALJ erred in failing to consider this evidence and diagnosis in his decision.

The Commissioner must evaluate all medical opinions, "regardless of its source." 20 C.F.R. § 416.927(c). 20 C.F.R. § 416.927(a)(2)[2] defines medical opinions as:

> statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

Although the term "acceptable medical sources" is not defined in Section 416.927, Social Security Ruling 06-03p[3] lists licensed clinical social workers as "[m]edical sources who are not 'acceptable medical sources.'" SSR 06-03p also states that information in the record from sources not deemed "acceptable" may provide insight into the severity of a claimant's impairment, but "cannot establish the existence of a medically determinable impairment." Therefore, according to the SSA's own policy interpretation ruling, Ms. Dugan-Marx's opinion does not constitute a "medical opinion." *See* 20 C.F.R.

---

[2] 20 C.F.R. § 416.927(a)(2) has been amended as of March 26, 2017. The version quoted here was in effect at the time of the ALJ's opinion on December 16, 2016.

[3] This ruling was rescinded by the SSA on March 27, 2017, but was in effect as of the time of the ALJ's opinion on December 16, 2016.

§ 416.927(a)(1). Thus, the ALJ was not required to evaluate Ms. Dugan-Marx's opinion in his analysis.

With that said, the ALJ must still consider all the evidence in a claimant's record when making an RFC determination. 20 C.F.R. § 416.945(a)(3). That would include consideration of opinions of social workers and others without medical expertise in the record. Yet, the ALJ is not required to explicitly address every piece of testimony and evidence in his written decision. *Haynes*, 416 F.3d at 626. As such, the ALJ has neither committed legal error nor left his RFC unsupported by substantial evidence by failing to address Ms. Dugan-Marx's opinion directly. Accordingly, remand on this issue standing alone is not warranted.

### b. Consultative Examiner, Dr. Sacks

On August 26, 2014, Dr. Sharon Sacks, a psychological consultative examiner, evaluated Johnson as part of the disability application process. After administering 10 subtests of the Weschler adult intelligence scale, Dr. Sacks reported Johnson's full-scale IQ score as 53 and diagnosed her with "Intellectual Disability — mild to moderate" ("the Diagnosis" or "Dr. Sacks' Diagnosis"). The ALJ gave "some weight" to Dr. Sacks' opinion while giving "great weight" to the opinions of the non-examining State Agency psychological consultants discussed earlier.

As relevant here, the consultants, Dr. Amy Johnson and Dr. Gange, submitted "Disability Determination Explanation" forms on August 28, 2014, and September 17, 2014, respectively based upon review of Johnson's medical records through those dates. [*See* DE 13 at 63–73, 75–85]. Both consultants reached the same conclusion about Dr.

Sacks' Diagnosis quoting her statement that "[Johnson] appeared somewhat capable of being around people regarding work-related activities, as she seemed to enjoy the elderly" and then stating "WEIGHT IS GIVEN." [DE 13 at 68, 80 (emphasis in originals)]. Both consultants then continued with identical statements finding the IQ score reported by Dr. Sacks to be very low given Johnson's work at SGA levels as well as her previous IQ scores that were considerably higher. [*Id.*]

Johnson argues that the ALJ erred in his analysis of Dr. Sacks' opinion by failing to address two parts of her opinion. Specifically, Johnson complains that the ALJ did not mention Dr. Sacks' assessment that she would require "total assistance" managing funds if disability benefits were awarded and Dr. Sacks' conclusion that the August 2014 evaluation and IQ testing were "an accurate representation" of Johnson's current mental status. Johnson also seems to contend that the ALJ failed to articulate a rationale for giving greater weight to the State Agency consultants' opinions despite their internally inconsistent findings in which they weighted Dr. Sacks' Diagnosis but discounted the results of the IQ testing she performed on Johnson stating that nothing in the record supported the drop in score from Johnson's original IQ testing as a child.

Generally, the Commissioner will give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined the claimant. 20 C.F.R. § 416.927(c)(1). In order to reject an examining physician's opinion in favor of a non-examining physician, an ALJ must cite supporting evidence from the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability."

*Clifford*, 227 F.3d at 870 (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)). Finally, an ALJ "may reject IQ scores that are inconsistent with a claimant's daily activities and behavior, especially when the scores are based on a one time examination by a nontreating psychologist." *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005); *Cf., e.g.*, *Adkins v. Astrue*, 226 F. App'x 600, 605 (7th Cir. 2007) (finding that a claimant failed to establish that he met the requirements of Listing 12.05(C) "because his IQ test scores were inconsistent with other evidence of his cognitive stability and were thus invalid.").

Here, Johnson attacks the wrong part of the ALJ's treatment of Dr. Sacks' opinion. The ALJ's failure to address Dr. Sacks' "total assistance" and "accurate representation" statements does not on its own justify remand. After all, as noted above, the ALJ is not required to explicitly address every piece of testimony and evidence in his written decision. *See Haynes*, 416 F.3d at 626.

Additionally, the ALJ articulated reasons for giving more weight to the opinions of the reviewing consultants than he did to Dr. Sacks' examining consultant opinion including references to the consultants' questioning of the arguably dramatic drop in Johnson's IQ scores. Attention to such inconsistency is reasonable given the Seventh Circuit's willingness to invalidate low IQ scores when a claimant's activities exceed those expected based on the low score. *See Adkins*, 226 F. App'x at 605. Thus, the ALJ would likely have been within his authority to reach a conclusion about Johnson's abilities based on a large differential between her IQ tests. Indeed, a legitimate comparison of Johnson's IQ scores could have led this Court to affirm the ALJ's

conclusion pursuant to the highly deferential substantial evidence standard for judicial review. *See* 42 U.S.C. § 405(g); *see also Roddy,* 705 F.3d at 636.

However, the ALJ's comparison of Johnson's IQ scores raises concerns about its legitimacy as already discussed above. The ALJ chose to favor Johnson's PPVT and Slosson IQ scores from her childhood over Dr. Sacks' 2014 most recent Wechsler results without demonstrating that he had converted the PPVT and Slosson scores to be comparable to the Wechsler score. As such, a gap of logic exists in the ALJ's underlying premise that Dr. Sacks' Wechsler results were not reliable. That gap of logic then prevents the Court from finding the necessary logical bridge between the comparison of Johnson's IQ scores and the ALJ's decision to favor the State Agency non-examining consultants' opinions over Dr. Sacks' opinion. Accordingly, the ALJ's analysis of the medical opinions is not supported by substantial evidence and must be remanded.

### c.   **Johnson's Mother**

Finally, Johnson appears to argue that the ALJ should have given more weight to the opinion and observations of her mother, Audrey Johnson, in reaching a conclusion about her RFC. No one disputes the ALJ was within his authority when he considered Ms. Johnson's third-party, nonmedical opinion in his RFC determination. Yet, opinions from parents cannot, on their own, establish the existence of a medically determinable impairment. SSR 06-03p. Parental opinion may, however, "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.*

The ALJ's decision acknowledged Ms. Johnson's third-party opinion, in the form of a Function Report, if only briefly. The ALJ identified the entire exhibit containing Ms.

Johnson's Function Report but only stated: "The claimant's mother has had the opportunity to observe the claimant on a daily basis over a long period of time, and her opinions are considered and given some weight in the decision." [DE 13 at 22].

While the ALJ's explicit analysis of Ms. Johnson's opinion is brief, it shows that the ALJ considered the opinion in full as required. Johnson's disagreement as to how the ALJ should have applied and weighted her mother's opinion does not justify a remand. *Cf. Limberopoulos v. Shalala*, 17 F.3d 975, 979 (7th Cir. 1994), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999) ("it was permissible for the ALJ to discredit the testimony of those interested witnesses that favored plaintiff."). Nevertheless, Johnson's case is being remanded for other reasons already discussed above. On remand, the ALJ would be wise to take care to articulate a logical bridge between Ms. Johnson's Function Report supporting a finding of disability and any discounting of her opinion to assure that Johnson and any future reviewing court can trace the path of the ALJ's reasoning more easily. *See Scott*, 297 F.3d at 595.

**IV.    CONCLUSION**

For the above reasons, the Commissioner of Social Security's final finding that Johnson was not disabled is **REVERSED**, and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

**SO ORDERED** this 25th day of March 2019.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge